780 So.2d 234 (2001)
ARMADILLO PARTNERS, INC., Appellant,
v.
STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION, Appellee.
Nos. 4D99-3275, 4D00-745.
District Court of Appeal of Florida, Fourth District.
February 14, 2001.
Rehearing Denied April 4, 2001.
Geoffrey L. Jones of Jeck, Harris & Jones, LLP, Jupiter, for appellant.
Pamela S. Leslie, General Counsel, and Vance W. Kidder, Assistant General Counsel, Department of Transportation, Tallahassee, for appellee.
WARNER, C.J.
In this appeal from a final judgment awarding appellant taking and severance damages in a condemnation case, appellant argues that the court erred in admitting testimony on severance damages by appellee's appraiser which was based upon a misconception of the law of severance damages; that the court erred in permitting evidence of a cure which was contrary to the condemnor's plans and specifications; and that certain comparable sales prices were admitted improperly. We reverse because the expert testimony on severance damages misconstrued applicable law.
*235 Armadillo Square, the property at issue in this case, is a shopping center located at the intersection of Griffin Road and Davie Road in Broward County. One of its features is an "Arbor Area" located in front of some of the businesses. This area includes landscaping, irrigation, grass, arbor structures, fences, and latticework. The property also contained 140 parking spaces for its restaurant, office, and retail space. In connection with an expansion of the intersection, the Department of Transportation ("DOT") condemned part of the parking lot, resulting in a reduction of parking spaces to 67. Therefore, in addition to the taking of property, there was severance damage to the remainder due to the loss of parking.
In order to mitigate appellant's loss, the DOT proposed a "cure" that would eliminate portions of the sidewalk and the Arbor Area, moving the parking area closer to the building and increasing the available parking to 99 spaces. At trial, the DOT appraiser, Mr. Gallion, testified to the value of both the taking and severance damages. Severance damages, as a general rule, "are the difference between the value of the property before and after the taking." See Canney v. City of St. Petersburg, 466 So.2d 1193, 1195 (Fla. 2d DCA 1985). However, this general measure may be replaced by a cost-to-cure approach where the cost is less than the decreased value of the remainder. See Mulkey v. Dep't of Transp., 448 So.2d 1062, 1065 (Fla. 2d DCA 1984).
Gallion calculated appellant's damages by first establishing that the market value of the property prior to the condemnation was $1,954,600. The appraised value of the property taken was $154,600. He then determined the after value of the property based upon the DOT's proposed cure. Using an income approach based on reduced rental values, the after value was $1,491,600. The difference between the before value and the after value with the cure was thus $463,000. By subtracting the $154,600 value of the taken parcel, he arrived at $308,400 as the severance damages. To that figure, he added the cost of effecting the DOT's cure of $102,800, to come up with a damage amount of $565,800. He testified that the loss of value to the remainder was due solely to the loss of parking, and his analysis of the income streams of comparable properties all focus on the changes in parking requirements. He gave no independent consideration to the loss of the Arbor Area. When cross-examined, he maintained that the loss of the Arbor Area would be reflected in the reduced rentals. There was no testimony that he considered the Arbor Area in any of the before value calculations or that any comparable sales included amenities such as those areas. Appellant objected to his testimony and moved to strike it as a misconstruction of the law of severance damages. We agree.
In a consistent line of cases, Florida courts have held that where property outside the parcel taken is converted to parking to effect a cure of severance damages, the loss of that property must be taken into account in determining severance damages. In State, Department of Transportation v. Byrd, 254 So.2d 836 (Fla. 1st DCA 1971), disapproved in part on other grounds by Broward County v. Patel, 641 So.2d 40 (Fla.1994), the DOT condemned a strip along a motel, reducing its parking. The DOT expert contended that the property owner suffered no severance damages because the motel could convert a shuffleboard court to parking spaces. The trial court refused to admit the expert's testimony, and the district court affirmed, stating:
It is clear to us that appellees sustained severance damages to the remainder of the land by virtue of the taking. Hence, the proffered testimony by which the State's expert attempted to voice his opinion that relocation of the parking spaces onto the remainder served to negate severance damages was properly excluded by the trial court. As observed by the trial court's order excluding *236 the proffered testimony, the state appraiser's estimate of damages sustained by appellees is impermissibly based on a premise which would require destruction by the property owners of property which is outside the area of taking as a means of theoretical mitigation of damages.
Id. at 837.
Similarly, in Williams v. State, Department of Transportation, 579 So.2d 226, 228 (Fla. 1st DCA 1991), disapproved in part on other grounds by Broward County v. Patel, 641 So.2d 40 (Fla.1994), the DOT's expert testified to a cost-to-cure as an alternative to severance damages. The expert first determined that $177,000 in severance damages resulted from a loss of parking due to the taking. He then determined that another portion of the remaining property could be converted to parking at a cost of $24,000. The value of the converted property was $48,000, for a total cost-to-cure of $72,000. The appellate court concluded that the expert's opinion determining that the cost-to-cure was less than the severance damages ignored the effects of the cure on the remaining property, including the fact that the new parking area would provide less parking spaces than the original, that the parking would further intrude on property outside the taking, and that the new parking area would prevent further expansion of the business on the site.
Although in Broward County v. Patel, 641 So.2d 40 (Fla.1994), the supreme court overruled both Williams and Byrd on another issue, Patel continues the Byrd and Williams interpretation of the law of severance damages with respect to the consideration of the effect of cost-to-cure on the remaining property. The court determined that it was error to reduce severance damages by awarding nothing for lost property value and other costs associated with converting other areas of a condemnee's land to replace lost parking areas. That the holdings of Williams and Byrd set forth above are still good law is also made evident by State, Department of Transportation v. Murray, 670 So.2d 977 (Fla. 1st DCA 1996), quashed on other grounds, 687 So.2d 825 (Fla.1997), another case involving loss of parking on the remainder parcel due to the taking. In that case also, the DOT's expert failed to account for the valuation factors compensable as severance damages. Specifically, the DOT ignored the fact that the place it proposed to add parking spaces was already designated for overflow parking. Thus, the property was left with less parking than it had before.
Reviewing the instant case, it is apparent that the DOT's appraiser did not consider the factors necessary under the case law for severance damages. Gallion calculated the before/after values by valuing the after property as though the cure had been made. But, in doing so, he still failed to account for the fact that the Arbor Area was converted to parking, just as was done in Byrd, Williams, Patel, and Murray. It is apparent from his figures as well as his testimony that no provision in his valuation was made for the loss of the Arbor Area itself. His focus was strictly on the valuation as affected by the loss of parking which reduced rent. Even if its only value was aesthetic, such value can be included in severance damages. See Hubschman v. Bd. of County Comm'rs of Collier County, 610 So.2d 691, 692 (Fla. 2d DCA 1992). Further, he did not even consider the value of the permanent improvements lost as a result of the conversion of the Arbor Area, such as the sprinkler system, the decorative brick wall, and the landscaping on the site. Because the expert's testimony was based upon a misconception of law, the testimony should have been excluded. See Byrd, 254 So.2d at 836. We therefore reverse and remand for a new trial.
We must also reverse as to the second issue. Over appellant's objection, the trial court permitted the testimony regarding the DOT's proposed cure to the remainder property. In order to complete the proposed cure, new driveways needed *237 to be connected to the revamped Griffin and Davie roads. The DOT cure plan contemplated that these driveways would be constructed within the planned temporary construction easements. However, because of South Florida Water Management District regulations, the driveways could not be constructed there. The court permitted an engineer to testify that permanent driveways could be constructed in a place different than was called for in the plans. In Belvedere Development Corp. v. Department of Transportation, Division of Administration., 476 So.2d 649, 653 (Fla.1985), the court said:
The second point raised by the petitioners is whether the state should have been permitted at trial to make certain promissory representations that they would or would not do certain things in the future which were not in the pleadings or construction plans offered in evidence. The petitioners assert that the damages caused by a project as contemplated by the construction plans in existence on the date of valuation and the pleadings govern the evidence of valuation and that representations of a purely promissory or speculative nature should not affect either the character or the extent of the damages the condemnor must pay as full compensation. We agree. When evidence in the form of plans and specifications is properly admitted for the purpose of providing a declaration of the manner in which the condemned property will be utilized, the Department should be bound by this evidence.
While the DOT argues that the evidence was only offered to show a potential cure, which does not have to be part of the plans, it cannot be permitted to rely on a cure inconsistent with its own plans and whose implementation may be speculative at best and would require the use and appropriation of property to effect the cure different from that taken under the plans. At the very least, just as in testimony regarding the possibility of affecting a cure with a variance, the evidence should show that there is a reasonable probability that the plans' changes are feasible, meet all necessary statutes, ordinances, codes, and regulations, and that the Department intends to construct the driveways at those locations. Cf. Patel, 641 So.2d at 42-3. The trial court thus erred in admitting the testimony regarding a plan for a cure inconsistent with the plans in evidence.
As to the final claim of error, the trial court acted within its discretion in admitting the comparable sales information.
For the foregoing reasons, we reverse the final judgment and remand for a new trial.
HAZOURI, J., and BARKDULL, III, THOMAS H., Associate Judge, concur.