285 So.2d 1 (1973)
STATE of Florida DEPARTMENT OF TRANSPORTATION, Petitioner,
v.
William E. STUBBS and Gertrude Stubbs, Respondents.
No. 42873.
Supreme Court of Florida.
June 27, 1973.
Rehearing Denied November 27, 1973.
Geoffrey B. Dobson and Barbara Ann Dell McPherson, Tallahassee, for petitioner.
*2 C. Ray Greene, Jr., of Greene, Greene, Smith & Davenport, Jacksonville, for respondents.
ERVIN, Justice.
This cause is before us on conflict certiorari granted to review the District Court of Appeal, First District, decision in Stubbs v. State Department of Transportation, 265 So.2d 425 (Fla.App. 1972), which purportedly conflicts with Anhoco Corporation v. Dade County, 144 So.2d 793 (Fla. 1962); Jacksonville, T. & K.W. Ry. Co. v. Thompson, 34 Fla. 346, 16 So. 282 (Fla. 1894); and Jahoda v. State Road Department, 106 So.2d 870 (Fla.App. 1958). We have examined the cases cited for conflict and have determined that we have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution, F.S.A.
The District Court of Appeal, First District, reversed a trial court ruling excluding evidence as to severance damages resulting from a condemnation action instituted by Petitioner. The subject property was condemned in connection with the building of Interstate 295, a limited access highway. Because of the road construction it was considered necessary to abandon a portion of Firestone Road fronting on Respondents' land and carrying traffic north and south. Firestone Road will be closed to northbound and southbound traffic just south of the northern boundary of the Respondents' tract, and will also be closed to traffic three blocks south of the southern boundary of Respondents' property because of the relocation of Firestone Road in the form of an overpass east of Interstate 295.
Thus, whereas Respondents' land was accessible to automobile traffic moving both north and south on Firestone Road, in the future access will only be gained by traversing an overpass from the east side to the west side of a major interstate highway. The Respondents sought to introduce evidence at trial of severance damages resulting from the impairment of access to Respondents' property, part of a 15.4 acre tract being used as a trailer court and rental complex. The Circuit Court for Duval County ruled in a pretrial order that the Respondents could not recover severance damages for a condemnation that placed their property in a cul-de-sac. We are in agreement with the District Court's reversal of that judgment.
The acquisition of property and property rights for eminent domain purposes has long been recognized in American jurisprudence. In Florida, F.S., Section 338.04, F.S.A., provides for the taking of "private or public property and property rights for limited access facilities and service roads, including rights of access... ." In Anhoco Corporation v. Dade County, 144 So.2d 793 (Fla. 1962), at 798, we held that the Legislature "specifically required" compensation for a destroyed right of access under the provision of that Section. The rationale for granting compensation, although not always expressed in judicial pronouncements, is that "property" is something more than a physical interst in land; it also includes certain legal rights and privileges constituting appurtenants to the land and its enjoyment. This is part of a gradual process of judicial liberalization of the concept of property so as to include the "taking" of an incorporeal interest such as the acquisition of access rights resulting from condemnation proceedings. See Stoebuck, The Property Right of Access Versus the Power of Eminent Domain, 47 Texas L.Rev. 733 (1969).
Anhoco Corporation v. Dade County, supra, involved a large parcel abutting a previously existing land service road which was being converted into a limited access facility. Two theatres were located on the property and had to be closed for varying lengths of time pending the construction of a frontage road paralleling the limited access facility and running the length of the abutting landowner's property. In holding that the landowner was entitled to compensation *3 for the harm done during the interim, we stated:
"There can now be little doubt that when an established land service road is converted into a limited access facility the abutting property owners are entitled to compensation for the destruction of their previously existing right of access.
* * * * * *
"Although the record is not sufficiently clear to specify the exact periods involved, it is apparent that Anhoco suffered substantial damages as a result of destruction of two or more of its rights of access prior to the establishment of the new frontage service road. It is entitled to compensation for this damage." Id. at 797, 798.
Cf. Boney v. State, Department of Transportation, 250 So.2d 650 (Fla.App. 1971); State Road Department of Florida v. McCaffrey, 229 So.2d 668 (Fla.App. 1969); and Benerofe v. State Road Department, 210 So.2d 28 (Fla.App. 1968), 217 So.2d 838 (Fla. 1969).
Petitioner has argued orally and in briefs that the case presently under review is distinguishable from the Anhoco holding in that the Respondents still have access to Firestone Road by use of the overpass which crosses Interstate 295, and therefore their right of access is not "destroyed." We view this argument as an overly restrictive interpretation of Anhoco and not in keeping with the spirit of that decision or the cases cited above.
A perusal of the record indicates Respondents' commercial property has been adversely affected to some degree by the loss of access resulting from their property being placed in a cul-de-sac, which was a part of the project to bring into existence Interstate 295. The availability of ingress and egress to their property that previously existed has now been seriously disturbed, if not destroyed. Ease and facility of access constitute valuable property rights for which an owner is entitled to be adequately compensated.
Whether the damage Respondents suffered is "different in kind" from that of their neighbors, whose lands were not condemned, is not entirely dispositive of the issue involved. The important question is whether there has been a substantial diminution in access as a direct result of the taking. What is "substantial" is a question of fact posing practical problems of proof for a jury's consideration. Where some right of access is still available, as would appear in the cause under consideration, it is for the jury to determine whether the resulting damages are nominal or substantial. See State Road Department of Florida v. McCaffrey, supra; Stoebuck, supra at 765.
The taking from Respondents involved a Section 338.04 limited access taking. A part of Respondents' property, including a portion of their former access rights to Firestone Road, was directly taken for limited access road purposes. They were not, of course, afforded direct access to the Interstate 295. In a situation of this kind where a portion of one's property and/or access rights to an existing road is taken for limited access road purposes, Section 338.04 as construed in the Anhoco case requires consideration by the jury of severance damages for loss of access rights. Respondents' situation is different from that of their neighbors along Firestone Road whose lands and/or access rights to Firestone Road were not condemned. In Respondents' case there was a direct physical taking of property and existing access rights for limited access road purposes; but there was no similar taking from their neighbors.
Jahoda v. State Road Department (Fla. App. 1958), 106 So.2d 870, cited by Petitioner for establishing conflict jurisdiction, was decided four years prior to our decision in Anhoco Corporation v. Dade County, supra. The District Court of Appeal, *4 Second District, relied heavily upon a dissenting opinion expressed in an Alabama decision, which in turn rested upon a result reached by the Supreme Court of New Mexico. Language cited therein and relied upon for conflict purposes, reads:
"Specifically, with reference to this case, the rule is that ordinarily no person has a vested right in the maintenance of a public highway in any particular place. That exception is based upon the consideration that the State owes no duty to any person to send public traffic past his door." Id. 106 So.2d at 872.
We are in agreement with the above statements insofar as they hold that "access" as a property interest does not presently include a right to traffic flow even though commercial property might very well suffer adverse economic effects as a result of a diminution in traffic. However, the right to introduce evidence at trial of severance damages resulting from physical impairment of access rather than an impairment in "traffic flow" is the subject of the litigation before this Court. To whatever other extent the language in Jahoda conflicts with our decision herein or that rendered by the District Court of Appeal, First District, at 265 So.2d 425, it is hereby expunged.
Upon reviewing the record in this cause, we conclude that the District Court has correctly applied the law and its decision is hereby affirmed.
It is so ordered.
ROBERTS, ADKINS and McCAIN, JJ., concur.
CARLTON, C.J., concurs specially with opinion.
DREW, J. (Retired), dissents with opinion.
BOYD, J., dissents.
CARLTON, Chief Justice (concurring specially).
I feel the weight of authority is to the effect that the landowner is not entitled to severance damages due to impairment of his access to the public road or highway system resulting from the relocation or reconstruction of roads and highways, if after the taking, he is able to get from his land to the public highway system with reasonable convenience.
I feel the question of reasonable convenience is for the jury to determine.
DREW, Justice, Retired (dissenting):
I agree with the views expressed in the able dissenting opinion of Mr. Judge Wigginton in the District Court. Therefore, I respectfully dissent.